ELIZABETH WASHINGTON, administratrix, plaintiff in error, *v.* GEORGE T. BARNES, defendant in error.

(Atlanta, June Term, 1870.)

JUDGMENT BY DEFAULT—SUIT IN COUNTY DIFFERENT FROM RESIDENCE—EFFECT OF JUDGMENT—PARTY TO SETTING ASIDE.—Where an administrator was sued in a county different from that in which he resided, and he acknowledged service

of the writ and filed no plea of any kind although the suit was. upon an open account over twenty years old, and judgment was taken by default, as on personal service, without proof.

*Held,* that whatever may be the ,effect of such a judgment, as against the administrator personally, it does not bind the third persons or the estate sought to be charged. And the surety on the administrator's bond has such an interest in setting the same aside that he may file a bill to enjoin its proceeding against the effects of the estate, and for the purpose of having it declared void as against said estate, and as against himself as the surety for the faithful administration of the same.

BILL OF EXCEPTIONS—MOTION TO DISMISS—FAILURE TO COPY ORDER.—Order No. 37, of General Meade was part of the bill, but was not copied on the bill of exceptions. A motion to dismiss bill of exceptions for that reason, was overruled. (R. See end of Report.)

Waiver. Fraudulent Judgment. Bill of Exceptions. Before Judge Gibson. Richmond Superior Court. March Adjourned Term, 1870.

On the 15th of June, 1867, Walton, by his attorney, H. W. Hilliard, filed in the office of said Court, his action against William G. Whidby, "as administrator, de bonis non, cum testamento annexo, of Thomas J. Walton, deceased, upon the following open account:

William G. Whidby, administrator, etc., etc., of Thomas J. Walton deceased,

To Stephen Walton.

1849.

October 10th. For twelve hundred dollars paid, laid

      · out and expended, and advanced to

      Thomas J. Walton, deceased,......... $1,200 00

*1849.

October 10th; Work and labor done, and

      money delivered and paid to

      Thomas J. Walton............,.....   $4,000 00

                                    $5,200 00

In the petition Whidby was described as "of said county." On the 27th of June, 1867, Whidby acknowledged service as such administrator, and waived copy and process. He filed no defense. On the 8th of June, 1868, Walton's attorney took a verdict against Whidby, as such administrator, for said $5,200 00 and entered a judgment for that amount and costs, against him as such administrator. Fi. fa. was issued and was levied upon certain shares of the Georgia Railroad and Banking Company.

At this point, George Barnes filed his bill for injunction of said fi. fa. and to set aside said judgment, against the sheriff, Whidby and Walton. It, with its amendments, made this case: Thomas J. Walton died between September, 1849 and the 14th of January, 1850, testate, possessed of thirty shares of stock in said company. Said will gave the dividends of

part of said stock to his wife, during her life, and of the balance, in trust, for the maintenance of his step-son Bruce, and the residuum, in trust, for the sole use of his daughter, wife of Luther L. Hill, of Montgomery, Alabama, all upon terms in the will stated. This will was proven and the executors qualified on the day last aforesaid. The executors fulfilled their duties and were discharged, leaving the matter of Bruce and Mrs. Hill undisposed of.

Afterwards, in April, 1866, Whidby was duly appointed administrator, de bonis non, cum testamento annexo, and gave bond in the sum of $1,500 00, with Barnes as his security. Under the direction of the Court of Ordinary, Whidby disposed of the Bruce part of the stock, according to said will. Subsequently, Stephen Walton, who had been testator's slave, brought said suit, and the proceedings, already stated, were had thereupon. When Whidby acknowledged service of *said suit, he was a citizen of and residing in Fulton county, Georgia, he and plaintiff, and others unknown, combined, thus fraudulently, to give jurisdiction to Richmond Superior Court, and allowed judgment by default, with intent to defraud the beneficiaries of said estate, and said Barnes, security. The case upon the docket stood against Whidby individually. Whidby is wholly insolvent. This judgment was taken in June, 1868, in violation of General Order No. 37, of Major General Meade, commanding the department of Georgia, etc., and against the orders of the presiding Judge, that no judgment should be taken in cases covered by said order. Said Order, No. 37, at the instance of the Convention of Georgia, temporarily put in force certain parts of the Constitution of Georgia, adopted in 1868, but not then ratified, of which the following was part: "No Court in this State shall have jurisdiction to try or determine any suit against any resident of this State upon any contract or agreement, made or implied, or upon any contract made in renewal of any debt, existing prior to the 1st day of June, 1865."

Neither the sheriff nor Whidby answered. The negro, Walton, answered. He admitted all the averments of the bill except as follows: Whidby did not distribute said Bruce stock according to law; it is still subject to his demand. He was never a slave. He was kidnapped when a boy, and brought from the District of Columbia to Richmond county, and forcibly held as a slave by said intestate, who annually received large sums for his hire. At length he raised $1,200 00 and procured one Moore, who acted as his friend, to pay this to intestate, and take a bill of sale to him, that he might thereafter be free. In 1853 he was adjudged free (because free-born) in the District Court of said District, returned to Richmond county, was registered as a freeman of color, and has ever since been resident there and regarded as free. Said judgment was obtained openly according to the usual rules, his petition having been on file, subject to in-

spection all the while said suit was pending. It was done without fraud, was for a just demand and against Whidby, who was then resident in said Richmond county, *being but temporarily away, animo revertendi. Said judgment was spread upon the minutes of said Court, openly read, and it and the fi. fa. upon the execution docket were ever open to public inspection. The order of General Meade, and the order of the Court under it were unconstitutional, because they impaired the obligations of contracts made or implied prior to June, 1865.

The injunction was granted, and motion to dissolve it was overruled. In the conduct of the cause at Chambers the Judge wrote and attached to the bill his reasons. Part of them were as follows: "I am satisfied that the announcement was made by me at every Court, to the Bar generally, that no judgment would be permitted on contracts prior to June, 1865, never for a moment questioning the power of General Meade to issue and enforce the order under the Reconstruction Acts of Congress. This case being in default, and appearing upon my docket as an individual indebtedness of Whidby, upon the announcement that personal service had been effected upon the defendant, judgment by default against defendant was permitted, or rather a verdict by default taken. Upon reading the minutes next morning, the Clerk called my attention to the fact that the verdict was for a claim anterior to June, 1865. I then, in presence of said Clerk, requested said counsel to take an order vacating said judgment, which I had good reason to expect had been done up to the filing of this bill. This much I feel bound to say in justification of my own course as Judge in permitting some and prohibiting others from obtaining judgment." Pending the cause, Walton died, and his wife, as administratrix, was made a party. On the trial, Whidby's evidence was read over defendant's objection that he not having answered the bill could not bind defendant by admissions. He testified that he was insolvent, and that he removed to DeKalb county in April, 1867, (but did business in Atlanta, Fulton county;) and other witnesses testified to the same.

George T. Barnes testified that inquiries were made of the firm of Barnes & Cumming about legacies left by Thomas J. Walton, and upon examination they found that Jno. H. Mann *had been executor of the estate, but that it was then unrepresented; that they applied to Whidby, who consented to act as administrator, and that witness went on his bond; Whidby sold some stock and turned over the proceeds; Whidby was regularly appointed administrator; that one Luther L. Hill, of Montgomery, Alabama, was entitled to a certain legacy under the will, which had not been fully administered; that Hill was a stranger, and employed Barnes & Cumming to have his stock turned over to

him, and to this end they applied to Whidby to become administrator cum testamento annexo.

The statement of Judge Gibson in overruling the motion to grant the injunction was read as evidence.

McLaws swore he was Clerk of Richmond Superior Court at the time of filing of writ; Mr. Hilliard asked him where Whidby was to be found; witness answered in Atlanta; and thereupon Mr. H. filed the writ, and at once took away the same, docketed "Stephen Walton v. William G. Whidby." The endorsement on the original writ was "Stephen Walton v. William G. Whidby, administrator de bonis non, cum testamento annexo, of Thomas J. Walton, deceased;" so endorsed when papers were filed and docketed by him..

The Court docket was put in evidence, on which the case sounded as follows:

"Stephen Walton v. William G. Whidby."

Whidby's insolvency was admitted. The clause of the Constitution of Georgia and the General Order of General Meade, No. 37, March 12, 1868, were read as evidence, and plaintiff closed.

The defendant put in evidence transcript of the record of a Court of the District of Columbia, in which it appeared that he had been adjudged free in April, 1853, and that Moore, against whom the suit for freedom was brought, had sworn to the payment of $1,200 00, as set out in the answer.

The original declaration and proceedings were put in evidence.

312      *The defendant then closed his case.

Walton, by his counsel, requested the Court to charge the jury: 1st, That the relation of the complainant to the judgment complained of is too indirect to entitle him to relief in a Court of Equity. 2d, That if any negligence has been shown by W. G. Whidby, in failing to set up a defense to the suit at law, he is not entitled to relief in a Court of Equity, when he seeks to enjoin or set aside the judgment obtained in a Court of law. 3d, That the complainant is not entitled to any relief that W. G. Whidby is not entitled to. 4th, That a judgment recovered against a party sued out of the county of his residence cannot be collaterally attacked in a Court of Equity. 5th, That the complainant, to entitle himself to relief in a Court of Equity in this case, must allege and prove that the amount for which the judgment was recovered, or some part thereof, was not justly due. Which charges the Court refused to give, but did charge the jury that: "If the injunction were asked by Whidby, the principle invoked by respondent to counsel would demand more careful attention. Yet when the judgment is sought to be enforced against other person's rights, and as it stands may affect injuriously the rights of others, the case presented by the surety in behalf of himself and the heirs at law, or legatees, for relief or injunction, is quite different. Whilst

it may be in the power of Whidby to waive the jurisdiction of Court, and consent to be sued in Richmond county, yet if that consent and waiver and the further action and judgment of the Court may affect others, and it is about to be enforced against rights of others, the person affected may assert the invalidity of that judgment, and Whidby, an insolvent representative, cannot consent to judgment, or waive jurisdiction of the Court, by which the surety would be bound or his right affected. The order of General Meade, suspending the jurisdiction of this Court for a limited time over a certain class of debts, was binding and legal, and enforced and intended to be enforced in all the proceedings of this Court, and all judgments obtained in violation of said order should be set aside at least as to interest *and parties not represented or heard on the trial." The jury found for the complainant. To all which charges and refusals to charge, Walton, by his counsel, then and there excepted. He says: 1st, that the Court erred in giving the charge as set forth. 2d, in refusing to give the said several charges as requested.

When the cause was called here a motion was made to dismiss the bill of exceptions because Order No. 37 was not copied in the bill of exception. It was part of the record, (in the bill,) and the motion was overruled.

H. W. Hilliard, for plaintiff in error, said the judgment was not void: Code, secs. 3409, 3410; 37 Ga. R., 26. Meade's order was void: Con. U. S., Art. 1, secs. 10, 5053; 3 Story on Con., sec. 1379; 1 Kent Com., 419; 8 Wheat R., 376; 37 Ga. R., 124. Whidby was in laches, and therefore injunction can not be had by him: Code, sec. 3074; 1 Kelley, 136; Adams' Esy., 382; L. Cas. in Eq., 109; 16 Ga. R., 398; 1 Baily S. C. R., 179; 3 John. Ch. R., 275, 4, 566; 11 Wis. R., 289; 12th, 81; 6th, 439; 12 Fla. R., 185; 2 Story Eq. Juris., sec. 898; 40 Ga. R., 493. No special fraud charged or proven: 1 Stock, (N. J.,) 381. Judgment out of county of defendant's residence not attackable in equity collaterally: 7 Cranch R., 332; 22 Ga. R., 60. The complainant must aver the amount not justly due, and offer to pay what is justly due: 11 Page's Ch. R., 900; 7 Wis. R., 547.

McLaws & Ganahl, for defendant, said, no jurisdiction over Whidby in Richmond: Code, secs. 3536, 3776, 4971; acknowledging service no waiver of jurisdiction: Code, secs. 3408, 3409. If not, judgment void as to third parties: Code, Sec. 3408; R. M. Ch. (Ga. R.,) 298; 4 Ga. R., 47; 5th, 527; 9th, 130; 11th, 453; 14th, 589. Inquiry into jurisdiction allowed: 34 Ga. R., 256, 365. Whidby's failure to defend was a legal fraud: Code, sec. 3116.

*McCAY, J.

The presumption of fraud and collusion between the plaintiff in this judgment and Whidby, the administrator, is

almost conclusive. Indeed, so palpably does it appear, that no Court would hesitate to interfere, unless prevented by some stern rule of law. Independently of all other facts, here is an administrator, who is aware that he was appointed for a special purpose, who, after he has left the county, acknowledges service of a writ based upon an open account twenty years old, files no plea, and allows judgment by default. We are not sure that upon this statement of facts, independently of the question of jurisdiction, it would not be the duty of a Court, at the demand of the heirs-at-law, to grant, in equity, a rehearing. But, as the case stands, there is no difficulty.

Under our law, Richmond Superior Court had no jurisdiction of this suit. It is true, Whidby, the administrator, might waive this, but even then the waiver does not bind third persons. The case seems to have turned below upon the idea that Whidby had, by his acknowledgment of service, waived the jurisdiction, or rather had consented to the jurisdiction. Is this so? Section 3250 (old Code) permits the defendant to acknowledge service and waive process. Where does the authority come from to make such an acknowledgment and waiver go further than to supercede the necessity of process and service? Suppose the process attached and the service complete, does not the question of jurisdiction remain? Here was no plea—no appearance. Why have not all the parties all rights, just as though service had been effected and no appearance had? Would not the judgment be void, Whidby living in Fulton?

But it is said that, as Whidby does not now come forward, his securities are powerless, they must take his fate. We do not think so. A Court of Equity has a longer arm than such a theory gives it. Very clearly, if this judgment proceeds, these securities will be liable to pay it. It is an admission of assets, and if the estate is insolvent, the redress is *immediate and direct upon the sureties. If the estate is not insolvent, and the judgment is collected, clearly under the charges in the bill, a fraud and gross maladministration has been practiced by Whidby, and the sureties are liable to the heirs-at-law. True, they, the securities, might wait until proceedings are taken against them directly by one or the other parties. But they are not compelled so to wait. It is a favorite and an ancient jurisdiction of a Court of Equity to prevent wrong, to stretch forth its powerful hand and stop the wrong doer before he has completed his designs.

Again, it may be years before the proceedings are had against the sureties; time and events may deprive them of their defense. Equity will permit them to come in now, while the witnesses live and the facts are recent, and clear up the cloud, which, in the shape of this judgment, hangs over them.

In any view of it, we think this demurrer ought to have been overruled, and we affirm the judgment of Judge Gibson.